

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

March 9, 1995

Mr. Carl Mullen
Deputy Director
General Services Commission
P.O. Box 13047
Austin, Texas 78711-3047

Opinion No. DM-328

Re: Whether the General Services Commission has the authority to promulgate a rule to deem businesses owned by individuals with disabilities as "historically underutilized businesses" as that term is defined in section 1.02(3) of article 601b, V.T.C.S. (RQ-721)

Dear Mr. Mullen:

On behalf of the General Services Commission (the "commission"), you ask whether the commission has the authority to promulgate a rule to deem businesses owned by individuals with disabilities as "historically underutilized businesses" as that term is defined in section 1.02(3) of article 601b, V.T.C.S. Section 1.02(3) defines the term "historically underutilized business" to mean a business that is owned (or, in the case of a corporation or partnership, at least fifty-one percent owned) by one or more persons who

> are socially disadvantaged because of their identification as members of certain groups, including black Americans, Hispanic Americans, women, Asian Pacific Americans, and Native Americans, and have suffered the effects of discriminatory practices or similar insidious circumstances over which they have no control.

V.T.C.S. art. 601b, § 1.02(3)(A)(i).[1]

---

[1]Section 1.02(3) in its entirety provides as follows:

"Historically underutilized business" means:

(A) a corporation formed for the purpose of making a profit in which at least 51 percent of all classes of the shares of stock or other equitable securities are owned by one or more persons who:

(i) are socially disadvantaged because of their identification as members of certain groups, including black Americans, Hispanic Americans, women, Asian Pacific Americans, and Native Americans, and have suffered the effects of discriminatory practices or similar insidious circumstances over which they have no control; and

Section 1.03 of article 601b requires the commission to "certify businesses that are historically underutilized businesses." *Id.* § 1.03(a). Section 1.03 also requires the commission and state agencies to compile information regarding contracts awarded to historically underutilized businesses. *Id.* § 1.03(c) - (d), (g), (k), (m). The commission is required to offer assistance to historically underutilized businesses regarding state procurement procedures and opportunities and to encourage state agencies to use historically underutilized businesses. *Id.* § 1.03(j), (p). Section 3.10(b) of article 601b requires the commission and state agencies to "make a good faith effort to assist historically underutilized businesses to receive not less than 30 percent of the total value of all contract awards . . . that the commission or other agency expects to make during a fiscal year." Both section 1.02(3) and section 1.03, the relevant provisions here, were enacted by the legislature in 1991 and amended in 1993. *See* Act of May 23, 1991, 72d Leg., R.S., ch. 677, §§ 1 - 2, 1991 Tex. Sess. Law Serv. 2457, 2457-58 (adding sections 1.02(3) and 1.03); Act of May 19, 1993, 73d Leg., R.S., ch. 684, §§ 1, 3, 1993 Tex. Sess. Law Serv. 2540, 2540-41 (amending sections 1.02(3) and 1.03).

Having reviewed article 601b and its legislative history, we conclude that the commission does not have the authority to promulgate a rule deeming businesses owned by individuals with disabilities as "historically underutilized businesses" as that term is defined in section 1.02(3) and used in section 1.03 of article 601b, V.T.C.S. The definition of the term "historically underutilized business" in section 1.02(3) refers to persons with two characteristics; first, persons "who are socially disadvantaged because of their identification as members of certain groups, including black Americans, Hispanic Americans, women, Asian Pacific Americans, and Native Americans," and, second,

---

(footnote continued)

　　　　(ii) have a proportionate interest and demonstrate active participation in the control, operation, and management of the corporation's affairs;

　　　(B)　a sole proprietorship created for the purpose of making a profit that is 100 percent owned, operated, and controlled by a person described by paragraph (A)(i) of this subdivision;

　　　(C)　a partnership formed for the purpose of making a profit in which at least 51 percent of the assets and interest in the partnership is owned by one or more persons who:

　　　　(i) are described in Paragraph (A)(i) of this subdivision; and

　　　　(ii) have a proportionate interest and demonstrate active participation in the control, operation, and management of the corporation's affairs;

　　　(D)　a joint venture in which each entity in the joint venture is a historically underutilized business under this subdivision; or

　　　(E)　a supplier contract between a historically underutilized business under this subdivision and a prime contractor under which the historically underutilized business is directly involved in the manufacture or distribution of the supplies or materials or otherwise warehouses and ships the supplies.

persons who "have suffered the effects of discriminatory practices or similar insidious circumstances over which they have no control." Although individuals with disabilities may certainly have the latter of these two characteristics, we believe that the legislature did not intend for the term "group" used in describing the first characteristic to embrace persons identified as members of groups other than those defined by gender, race, or ethnicity.

This conclusion is based on our review of both article 601b and the legislative history of the historically underutilized business provisions. First, individuals with disabilities are mentioned nowhere in section 1.02(3) or 1.03. Subsection (A)(i) of section 1.02(3) refers solely to persons identified as members of groups defined by gender, race, or ethnicity. Furthermore, subsection (g) of section 1.03 requires the commission, in cooperation with the comptroller and state agencies, to "categorize each historically underutilized business that is included in a report under this section by sex, race, and ethnicity." We believe that if the legislature had intended persons identified as members of groups other than those defined by gender, race, and ethnicity to qualify as historically underutilized businesses that it would have prescribed other, or at least broader, reporting categories. In addition, the legislative history is devoid of any references to persons identified as members of groups other than those defined by gender, race, and ethnicity. *See, e.g.*, House Research Organization, Bill Analysis, H.B. 799, 72d Leg. (1991); *see also* House Special Comm. on Bus. Owned by Women or Minorities, Interim Report to the 71st Texas Legislature (1989).[2]

Finally, we note that the 1991 and 1993 appropriations acts contain provisions regarding state contracts with historically underutilized businesses applicable to any appropriation to a state agency. The 1993 appropriations act defines the term "historically underutilized business" to mean:

> a corporation formed for the purpose of making a profit in which at least 51 percent of all classes of the shares of stock or other equitable securities are owned by one or more persons who have been historically underutilized because of their identification as women or as members of certain minority groups, including Black Americans, Hispanic Americans, women, Asian Pacific Americans, and Native Americans who have suffered the effects of discriminatory practices or similar insidious circumstances over which they have no control.

General Appropriations Act, 73d Leg., R.S., ch. 1051, pt. V, § 101(2)(a), 1993 Tex. Sess. Law Serv. 4521, 5379. The definition in the 1991 appropriations act is similar. *See* General Appropriations Act, 72d Leg., 1st C.S., ch. 19, pt. V, § 106(2)(a), 1991 Tex.

---

[2]The 1991 legislation was described at a hearing of the House Committee on State Affairs by its author as coming out of this interim committee. Hearings on H.B. 799 Before the House Comm. on State Affairs, 72d Leg. (March 18, 1991) (testimony of Representative Dutton).

Sess. Law Serv. 365, 1042. The 1993 appropriations act also provides that it is the intent of the legislature that state agencies report certain information about state contracting to the General Services Commission "classified by minority group status as defined in subsection 2.a above and by gender." General Appropriations Act, 73d Leg., R.S., ch. 1051, pt. V, § 101(8)(a), 1993 Tex. Sess. Law Serv. 4521, 5380. Although these appropriations act provisions are not intended to create substantive law,[3] we believe it is significant that they too describe and discuss historically underutilized businesses solely in terms of businesses owned by persons identified as members of groups defined by gender, race, and ethnicity.

In conclusion, it is a well-established legal principle that an administrative agency "can adopt only such rules as are authorized by and consistent with [its] statutory authority." See Texas Fire & Casualty Co. v. Harris County Bail Bond Bd., 684 S.W.2d 177, 178 (Tex. App.--Houston [14th Dist.] 1984, writ ref'd n.r.e.). Because the term "historically underutilized business" as defined by section 1.02(3) is limited to businesses owned by persons identified as members of groups defined by gender, race, or ethnicity, we must conclude that the commission is not authorized to promulgate a rule to deem businesses owned by individuals with disabilities as "historically underutilized businesses." Such a rule would be inconsistent with the statute.

Of course, the legislature is free to amend section 1.02(3) to include businesses owned by individuals with disabilities within the definition of historically underutilized businesses if it determines such an amendment is appropriate. In this regard, we note that we do not believe that such an amendment would be inconsistent with sections 3.20, 3.22, and 4.15 of article 601b or chapters 94 and 122 of the Human Resources Code, the other provisions about which you inquire. These provisions pertain to state purchases of goods and services from nonprofit agencies and other organizations that train individuals with disabilities or to the licensing of certain persons to operate certain state facilities.[4] None

---

[3]Both appropriations act provisions regarding historically underutilized businesses contain the following language: "This section is an expression of the intent of the Legislature and does not impose a duty not already provided for by general law or negate a power granted by general law." See General Appropriations Act, 72d Leg., 1st C.S., ch. 19, pt. V, § 106(3), 1991 Tex. Sess. Law Serv. 365, 1043; General Appropriations Act, 73d Leg., R.S., ch. 1051, pt. V, § 101(3), 1993 Tex. Sess. Law Serv. 4521, 5379.

[4]Section 3.20 of article 601b provides that "products of workshops, organizations, or corporations whose primary purpose is training and employing mentally retarded or physically handicapped persons shall be given preference if they meet state specifications as to quantity, quality, and price." Similarly, section 3.22 provides that the competitive bidding provisions of article 601b are not applicable "to state purchases of blind-made goods or services offered for sale to state agencies as a result of efforts made by the Texas Committee on Purchases of Blind-Made Goods and Services" created by chapter 122 of the Human Resources Code. Section 122.004(a) of the Human Resources Code makes it clear that "blind-made goods and services" refers to goods and services offered for sale by nonprofit agencies. Section

of these provisions pertain to state contracting with for-profit businesses owned by individuals with disabilities.

## S U M M A R Y

The General Services Commission does not have the authority to promulgate a rule to deem businesses owned by individuals with disabilities as "historically underutilized businesses" as that term is defined in section 1.02(3) of article 601b, V.T.C.S., because the legislature did not intend that term to refer to businesses other than those owned by persons who are socially disadvantaged because of their identification as members of groups defined by gender, race, or ethnicity.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Mary R. Crouter
Assistant Attorney General

---

(footnote continued)
4.15(j) of article 601b and chapter 94 of the Human Resources Code provide for the licensing of blind persons and other individuals with disabilities to operate vending facilities in state office buildings.